RECEIVED
IN LAKE CHARLES, LA

APR 11 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PIONEER EXPLORATION LTD. | : | DOCKET NO. 2:07 CV 0566 |
| VS. | : | JUDGE MINALDI |
| CLEVELAND J. RUTHERFORD AND TERRY A. RUTHERFORD | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment, [doc. 21], filed by the plaintiff Pioneer Exploration Ltd. (hereinafter "Pioneer"). The defendants, Cleveland J. Rutherford and Terry A. Rutherford (hereinafter "the Rutherfords") filed an Opposition [doc. 28]. Pioneer filed a Reply [doc. 34]. At the request of the Court, the parties filed supplemental briefs on the issue of fraud [docs. 39, 40].

## FACTS

In the latter part of 2005, Pioneer contacted the Rutherfords to initiate lease negotiations.[1] Jennifer Jones, counsel for the Rutherfords, and George Ruff, the vice president and general counsel for Pioneer, conducted the negotiations.[2] All of the preliminary leases recited the acreage as being seven (7) acres, although all of the proposed leases also stated that the lessee

---

[1] Pl.'s Mem. in Support of Mot. for Summary Judgment [doc. 21], at 3.

[2] *Id.*

1

"needs to be provided with a better property description."[3]  In January 2006, Mr. Ruff advised

Ms. Jones that Pioneer required a "better property description."[4]  On February 6, 2006, Ms. Jones

faxed Mr. Ruff the description of the Rutherfords' property on file with the Cameron Parish

Assessor's office.[5]  Ms. Jones also faxed an exerpt from the map, indicating the seven-acre tract

highlighted in yellow.[6]

　　　After receiving the fax, Mr. Ruff inserted the property description into the lease as

follows: "All of the land owned by Lessor in the W/2 NE/4 SE/4 of Section 34, Township 14

South, Range 7 West, Cameron Parish, Louisiana," which is just under 22 acres.[7]  Two checks

dated February 9, 2006 were enclosed with the final version of the lease with the notation

"SURF. LS. ACQUISITION COVERING, 7 ACRES IN THE W/2NE/4SE/4 OF, SEC. 34, 14S,

7W CAMERON PARI."[8]  The final lease and checks were sent to the Rutherfords.[9]  Ms. Jones

never received a copy of the final lease via mail.[10]

　　　On February 27, 2006, twenty-one days after receiving the lease, the Rutherfords signed

---

[3] Pl.'s Ex. 3.

[4] *Id.*

[5] *Id.*; *see also* Pl.'s Ex. 4.  This fax demonstrated that the Rutherfords owned
approximately 21.95 acres in the W/2 NE/4 SE/4 of Section 34, about half of which was
unusable marshland. *Id.*

[6] Def.'s Ex. J.

[7] Pl.'s Ex. 5.

[8] Def.'s Ex. M.

[9] Def.'s Ex. K (Jennifer Jones Aff.)

[10] *Id.*

the lease agreement with Ms. Jones signing as a witness.[11]  The lease agreement also states that the acreage is only an estimate, that Pioneer would arrange to have the property surveyed, and the survey description will replace the lease language.[12]  It is uncontested that neither the Rutherfords nor Ms. Jones read the final lease agreement.

On August 15, 2006, Pioneer recorded a lease agreement notice that included the survey with the Cameron Parish Clerk of Court.[13]  On December 11, 2006, Ms. Jones sent a fax to Mr. Ruff requesting that the property description in the lease agreement be changed due to an error in the property description.[14]  On December 12, 2006, Pioneer responded that Pioneer "does not desire to amend the Lease Agreement."[15]  On February 8, 2007, Ms. Jones wrote to Pioneer and demanded renegotiation of the lease and threatened to sue if Pioneer did not respond.[16]  Pioneer responded by filing this suit.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*

---

[11] *Id.*

[12] *Id.*

[13] Pl.'s Ex. 4.  Pioneer sent a copy of the lease agreement to Ms. Jones on August 15, 2006.  Pl.'s Mem. in Support of Mot. For Summary Judgment, at 5.

[14] Def.'s Ex. P.

[15] Def.'s Ex. Q.

[16] Def.'s Ex. S.

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

After reviewing all of the evidence, this Court finds that there are no issues of material fact. Although the Rutherfords argue that all negotiations focused on a seven-acre tract and that the parties never discussed the possibility of leasing all of the land, these facts are not disputed by Pioneer. Accordingly, there is no genuine issue for trial, and summary judgment is appropriate.

## ANALYSIS

A lease is a contract, and has the effect of being the law between the parties. *Richard v. Metro Bingo of Lafayette, Inc.*, 05-293 (La. App. 3 Cir. 3/29/06); 926 So.2d 83, 87. If contractual language is clear, parol and extrinsic evidence is inadmissible to demonstrate the intent of the parties. LA. CIV. CODE ANN. art. 2046. Extrinsic evidence is admissible "when the written agreement is manifestly incomplete and is not intended to constitute the entire agreement

4

between the parties." *Condrey v. Suntrust Bank of Georgia*, 429 F.3d 556, 563 (5th Cir. 2005). Louisiana also permits extrinsic evidence when "the interest of justice" requires it to prove circumstances like the "vice of consent." *Id.*; *see also* LA. CIV. CODE ANN. § 1848.

Pioneer argues that parol evidence is inadmissable because the contract contains an integration clause, which bars the admission of parol evidence to vary a written contract. *See Condrey*, 429 F.3d at 563, 566. Pioneer argues that because the contract properly reflects the parties' intentions, parol evidence must be excluded from review. *Id.* The Rutherfords argue that the integration clause in the contract is not applicable because parol evidence is admissible when there are allegations of fraud, error, or mistake. Because the Rutherfords argue that there was a "vice of consent," either through mistake or fraud, parol evidence is admissible. Having resolved the issue of the admissibility of parol evidence, this Court now turns to the three contractual defenses the parties briefed: mutual mistake, unilateral mistake, and fraud.

### A.) Mutual Mistake

Reformation is available only when "the instrument recites terms to which neither party agreed." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 274 (5th Cir. 1987) (citing *Valhi, Inc. v. Zapata Corp.*, 365 So.2d 867, 870 (La. App. 4th Cir. 1978)) (noting that reformation may only correct mistakes in written instruments when the error was mutual). Thus, the party seeking reformation must establish the mutual error at the time of signing by clear and convincing evidence. *Id.* at 275, 276 (noting that the high burden of proof comports with the policy that where two parties have an unambiguous signed contract, there is a presumption that the writing expresses the true intention of the parties). When determining whether the parties made a mutual mistake, the court considers "who reduced the agreement to writing, who the parties to the

5

agreement were, whether the provision at issue was central to the agreement, and what pains the parties took in reviewing the written instrument." *Id.* (finding that there was not a mutual mistake even though there was a difference between the antecedent agreement and the written instrument, where both sides had people experienced in these types of matters, the party seeking reformation had time to review the contract, and the disputed provision was drafted in clear and simple terms).

Pioneer argues that the Rutherfords lack clear and convincing proof that mutual mistake occurred. *See Phillips*, 812 F.2d at 274. Pioneer argues that there is no evidence that Pioneer made a mistake by drafting the lease. Pioneer argues that it modified the acreage of the lease after the Rutherford's attorney sent a better property description of the land that demonstrated the Rutherfords owned almost twenty-two acres. Moreover, Pioneer argues that under the considerations of *Phillips*, there was not a mutual mistake because the Rutherfords took several weeks to review the lease before signing, both parties were represented by counsel, and although Pioneer drafted the final lease agreement, it was based upon a property description provided by the Rutherfords' counsel. Without providing any legal support or briefing the issue of mutual mistake, the Rutherfords argue that there is a triable issue of mutual mistake, because Pioneer consistently referred to a seven-acre lease.

Pioneer's evidence demonstrates that it intended to modify the final lease to include all of the Rutherfords' land. The Rutherfords have failed to proffer clear and convincing evidence demonstrating mutual mistake. Accordingly, this court holds that there was no mutual mistake and that reformation is not appropriate.

6

**B.)  Unilateral Mistake**

A contract may be vitiated by an error of fact, and without consent, there is no contract. LA. CIV. CODE ANN. § 1848. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." *Id.* § 1849. Thus, even unilateral error can rescind a contract, so long as the error concerns a fact that was the principal cause for making the contract, and where the other party knew or should have known it was the principal cause. *Id.* § 1845; *see also Savoie v. Bills*, 317 So.2d 249 (La. App. 3d Cir. 1975).

The Rutherfords argue that the acreage of the lease was a principal cause of the contract. The Rutherfords also argue that the evidence overwhelmingly demonstrates that Pioneer knew the Rutherfords only intended to lease seven acres, noting that all negotiations referenced seven acres, the notation on the check was for seven acres, a map with seven acres highlighted accompanied the better property description, and all preliminary lease agreements referenced seven acres. Thus, the Rutherfords argue that their unilateral mistake justifies recession because the acreage was a principal cause of the lease, and Pioneer knew that the acreage was a principle cause of the lease.

When, however, the unilateral mistake is caused by the complaining party's inexcusable ignorance, neglect, or want of care, "Louisiana jurisprudence is sprinkled" with cases that deny relief. *Scott v. Bank of Coushatta*, 512 So.2d 356, 362 (La. 1987). Furthermore, courts should not rescind contracts when "the error is unilateral, easily detectable, and could have been rectified by a minimal amount of care," and when the complaining party is in a position that renders the claim of error particularly difficult to rationalize, either by his or her education or

7

experience. *Id.* Louisiana courts have consistently refused to rescind a contract for inexcusable neglect. *See, e.g., In the Matter of Eubanks*, 1994 WL 670437, *2-*3 (E.D. La. 11/30/94) (not reported in F. Supp.) (finding no error where Eubanks failed to read a contract before signing); *Smith v. Remodeling Service, Inc.*, 94-589 (La. App. 5th Cir. 12/14/94); 648 So.2d 995, 999 (refusing to rescind a contract for the sale of a home, where the square footage was improperly listed, because the buyers could have easily measured the square footage themselves prior to the sale); *First Nat'l Bank v. Campo*, 537 So.2d 268, 271 (La. App. 4th Cir. 1988) (declining to rescind the contract, because any error was due to the fact that Campo "simply failed to read the document before signing").

In its Reply Brief, Pioneer argues that the Rutherfords' unilateral mistake argument is without merit. Pioneer argues that the error was easily detectable simply by reading the contract. Moreover, Pioneer argues that recession is not permitted under Louisiana jurisprudence, because any unilateral error here was due to a failure to read the final lease agreement.

This court rejects the Rutherfords' unilateral mistake argument. The plain text of the contract is clear that the final version of the lease encompassed all of the Rutherfords' property. Despite the fact that the final version included all of the land, whereas the lease drafts and negotiations referenced only seven acres, a cursory review of the contract would have revealed the error, and as such, the error was clearly detectable. The Rutherfords, especially since they were represented by counsel and have entered into several mineral lease agreements, were in a position to easily discover the error. Thus, under *Scott*, because failure to read a contract before signing constitutes inexcusable neglect, and because the Rutherfords and their counsel were in a position "which renders [their] claim of error particularly difficult to rationalize,

accept, or condone," this court rejects their unilateral mistake argument.

### C.) Fraud

Pursuant to the Louisiana Civil Code, consent to a contract may be vitiated by fraud. LA. CIV. CODE ANN. art. 1948. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." LA. CIV. CODE ANN. art. 1953. Moreover, "[f]raud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations." LA. CIV. CODE ANN. art. 1954. The finding of fraud is a factual determination, which the plaintiff must prove by a preponderance of the evidence. *Alvis v. CIT Group/Equipment Financing, Inc.*, 05-0563 (La. App. 3d Cir. 12/30/05); 918 So.2d 1177, 1185 (noting that the evidence may include circumstantial evidence).

Louisiana courts have consistently held that a party cannot claim fraud when the party failed to read a document before signing. In *Martin v. JKD Investments, LLC*, the court rejected Martin's claim that his mineral deed was fraudulent because he failed to read the document before signing, and could have easily done so. 961 So.2d 575, 578 (La. App. 2d Cir. 6/20/07). The court remarked that "clearly this is a situation in which the truth could have been ascertained without difficulty, inconvenience, or special skill" because the document Martin failed to read specifically conveyed his mineral rights to the defendant. *Id*.

In *Alvis*, the court similarly rejected the plaintiff's claim of fraud in his contract to purchase a skidder, even though prior representations had stated the skidder was a 2001 model, in

part because the document attached to the plaintiff's lease agreement correctly stated that the skidder was actually a 1997 model. 918 So.2d at 1185-86. In *Matter of Eubanks*, the federal district court noted that Louisiana law presumes that parties read their contracts before signing, but that this presumption may be overcome if there is evidence of fraud. 1994 WL 670437, *2. Fraud can occur when one party is prevented from reading a contract or the terms are buried in the contract. *Id.*

In their Supplemental Memorandum, the Rutherfords argue that Pioneer intentionally misrepresented the intent of the parties by inserting an incorrect property description in the final lease, thus gaining an unjust advantage over the Rutherfords. The Rutherfords point to the eight months of negotiations between Pioneer and the Rutherfords that all focused on a seven-acre tract. The Rutherfords argue that Pioneer further engaged in fraud by inserting the provision "all of the land" in the final version of the lease agreement, but including a notation on the check that the amount was for seven acres. The Rutherfords also argue that Pioneer acted fraudulently by failing to mail Ms. Jones a copy of the final lease agreement. Lastly, the Rutherfords argue that Pioneer acted fraudulently because Ms. Jones relied on the integrity of Pioneer's legal counsel and did not expect Pioneer to claim that the lease covered all of the land.

Pioneer argues that there was no fraud as a matter of law because the Rutherfords failed to read their lease, and Louisiana law does not permit plaintiffs to recover for fraud when the truth was ascertainable without difficulty, inconvenience, or special skill. Pioneer also argues that Louisiana courts have consistently refused to find fraud when parties failed to read their contracts because the truth is easily discoverable. Furthermore, Pioneer argues that the Rutherfords had ample time in which to read the lease, and the terms of the lease were clearly

10

stated on the first page of the lease agreement. Moreover, Pioneer argues that this case remains in the sphere of Article 1954 because Pioneer and the Rutherfords were not in a position of confidence such that the Rutherfords could reasonably rely on Pioneer's representations.

Because the existence of fraud is a factual determination, this Court must first make findings of fact. This Court again notes that the facts are not disputed: the lease negotiations all involved a seven-acre tract with the caveat that a better property description was needed; Ms. Jones faxed a property description showing the Rutherfords owned almost twenty-two acres, with the seven acres highlighted; the final lease referenced the property description Ms. Jones provided; Pioneer sent the final lease and checks to the Rutherfords; the property description was on the first page of the surface lease and contained less than twenty-five words and numbers; after three weeks, the Rutherfords signed the final lease agreement with Ms. Jones serving as a witness; and neither the Rutherfords nor Ms. Jones read the final lease agreement.

This Court does not find that the Rutherfords have satisfied their burden of showing that fraud was present by a preponderance of the evidence. Fraud cannot negate consent when the truth is easily ascertainable. LA. CIV. CODE ANN. art. 1954. Although this Court seriously questions whether Pioneer was trying to gain an unfair advantage by contracting for the lease of all of the land–almost twenty-two acres–instead of the seven acres the parties negotiated, without any discussion with the Rutherfords or Ms. Jones, the law simply does not permit this Court to find fraud when the terms of the contract were clearly spelled out on the first page of the final lease agreement, and where the Rutherfords and Ms. Jones failed to read the final document. Moreover, the Rutherfords have not demonstrated that Pioneer and the Rutherfords were in a position of confidence such that Article 1954 does not govern.

## CONCLUSION

After reviewing all of the evidence and pleadings, this Court finds there are no genuine issues of material fact.  Therefore, summary judgment is appropriate to declare that the lease between Pioneer and the Rutherfords is valid and enforceable according to its terms and conditions as written; accordingly,

IT IS ORDERED that Pioneer's Motion for Summary Judgment is hereby GRANTED.

Lake Charles, Louisiana, this ___ day of _____, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

12